UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WILLIAM EMERICK, *pro se*, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:17-CV-895 JD |
| | ) |
| ANTHEM INSURANCE COMPANIES, INC., | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

Plaintiff William Emerick, proceeding *pro se*, filed this suit against Defendant Anthem Insurance Companies, Inc., alleging that Anthem failed to reimburse him and his now-deceased wife for some of her medical expenses in accordance with their joint health insurance policy, which itself is created under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. Anthem has now filed for summary judgment on Emerick's complaint. [DE 24] For the reasons stated herein, the Court will grant summary judgment in favor of Anthem.[1]

---

[1] Also pending before the Court are two motions to strike, one filed by each side. First, Emerick moves to strike Anthem's use of the term "request" when describing three letters Anthem sent to him that outlined additional information needed for one of his claims for reimbursement. [DE 53] The Court will deny this motion; it is completely unsupported and whatever wording Anthem assigns to these letters has no bearing on the Court's review of the documents themselves. Second, Anthem asks this Court to strike all of Emerick's designated record evidence as unauthenticated. [DE 61] Regardless of the documents' authenticity, Anthem's motion to strike will be denied as moot because, despite the Court's consideration of those documents, summary judgment will nonetheless issue for Anthem. And given this outcome, Anthem's recent motion to dismiss based on Emerick's noncompliance with the Court's orders will similarly be denied as moot.

**FACTUAL BACKGROUND**

<u>The Policy</u>

Emerick and his wife were joint beneficiaries of an employee welfare benefit policy created under ERISA. The policy bars beneficiaries from taking legal action to recover benefits any later than three years after the date the relevant claims are required to be furnished to Anthem. [DE 9-1 at 89] Beneficiaries must give notice of a claim for benefits within 90 days of receiving covered services and provide the necessary information for Anthem to determine benefits. *Id.* at 80. Failure to abide by this deadline is not fatal so long as the beneficiary demonstrates that the notice was submitted as soon as reasonably possible. *Id.* Under no circumstances, however, can a claim or related information be submitted "later than one year after the 90 day filing period ends[.]" *Id.* In other words, the absolute last day for a beneficiary to submit a claim or supporting information is one year plus 90 days after he or she receives covered services.

Before taking legal action to recover benefits, beneficiaries must exhaust the "grievance and appeals procedures," which allow them to challenge Anthem's decision regarding those benefits. *Id.* at 86-89.[2] Anthem will resolve all grievances within twenty business days of their receipt, plus another ten business days at most in the event of an extension. *Id.* at 86-87. If the beneficiary is not satisfied, he or she may then appeal the grievance decision within 60 days. *Id.* at 87.

---

[2] The policy's language elsewhere clarifies that ERISA beneficiaries need only file a grievance prior to taking legal action, while an appeal of a grievance is only a "voluntary level of review and need not be exhausted prior to filing suit." [DE 9-1 at 88] Should a beneficiary decide to appeal a grievance, the three-year limitations period is tolled pending that appeal. *Id.* at 88-89.

2

*Emerick's Claims*

In late 2011 and early 2012, Emerick and his wife incurred expenses for the following items related to her medical treatment: (1) emergency treatment in December 2011 at Sanoviv Medical Institute in Baja, Mexico; (2) subsequent ground transportation to and treatment at the critical care unit of Hospital Angeles in Tijuana, Mexico, which lasted from mid-December 2011 until early January 2012; and (3) transportation from the U.S.-Mexico border by both ground ambulance and jet to a hospital in Goshen, Indiana, on January 4, 2012. [DE 52 at 1-2] In total, Emerick maintains these items cost him over $232,000. Whether Emerick actually incurred these expenses is not at issue, however. Instead, he alleges that he submitted claims for reimbursement of these expenses to Anthem, only to have his claims either ignored or wrongfully rejected. Specifically, he alleges he submitted a claim on March 13, 2012, labeled Claim No. 130020142800. [DE 6 at 2]

Anthem reviewed the claims history associated with Emerick's wife and found no record of Claim No. 130020142800. [Affidavit of Michelle Kersey ¶ 6] But the record indicates that at least two claims pertaining to his wife's treatment were submitted. First, a letter from Anthem to Emerick's wife, dated November 10, 2012, acknowledged that she had filed an "International Claim," but that the claim could not be processed because it needed to be translated into English. [DE 51-1 at 85] The letter does not identify the international claim by any label or number, however. Second, regarding transportation from the border to Indiana on January 4, 2012, it appears Emerick's wife submitted a claim form dated January 23, 2013, and attached two documents: a letter from Care Medical Transportation (the ambulance company that transported her from the border to an airfield in southern California) informing her that she owed $1,309.00 for services provided on January 4, 2012; and an invoice from Air Evac International (the

company that flew her from California to Indiana) noting that the $24,000 trip had been paid for. [DE 26-1 at 31, 33][3] In response to this claim, Anthem sent Emerick three letters requesting additional information, the last of which was dated June 7, 2013. [DE 26-1 at 34-37] Emerick then answered with a letter of his own on August 3, 2013, explaining his efforts to secure the information sought by Anthem for both the international claim and the transportation claim. *Id.* at 39-45. The record contains no evidence that the parties communicated beyond this August 2013 letter.[4] Emerick filed this lawsuit on November 1, 2017. [DE 6]

**STANDARD**

On summary judgment, the moving party bears the burden of demonstrating that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999).

---

[3] Emerick paid out of pocket for this flight. [DE 26-1 at 41]

[4] Although, Emerick maintains by way of argument only that he reached out to Anthem following his August 2013 letter, but he did not receive any substantive response.

4

**DISCUSSION**

A beneficiary of an ERISA-based insurance policy may bring an action under 29 U.S.C. § 1132(a)(1)(B) "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[5] The parties do not dispute whether Emerick is a "beneficiary,"[6] and here, he seeks to recover benefits he believes are due to him under the policy. Anthem argues, however, that Emerick failed to submit any of the claims at issue or otherwise improperly submitted them. Alternatively, Anthem argues that even if Emerick had properly submitted the claims, his lawsuit is time-barred by the policy's three-year limitation on legal actions. The Court agrees that, at the very least, Emerick cannot recover on his claims because he filed this lawsuit long after the policy's window to take legal action closed. *See Grammer v. Aetna Life Ins. Co.*, 286 F. App'x 947, 949 (7th Cir. 2008) ("Employee welfare plans can impose a time limitation on suits so long as the time period is reasonable.") (citing *See Doe v. Blue Cross Blue Shield United of Wis.*, 112 F.3d 869, 874-75 (7th Cir. 1997)).

As outlined above, beneficiaries have one year and 90 days (at most) from the date of covered services to submit their claims to Anthem. The policy further makes clear that beneficiaries "may not take legal action against [Anthem] to receive benefits … [l]ater than three years after the date the claim is required to be furnished to [Anthem]." [DE 9-1 at 89] Reading these provisions together, Emerick had a total of four years and 90 days from when his wife

---

[5] Although Emerick originally brought this action under Indiana's breach of contract laws, the Court made clear in its Order dated April 11, 2018, that it construes his allegations as arising under ERISA. [DE 12 at 4-5]

[6] "The term 'beneficiary' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

received services to file the instant lawsuit. He filed this action on November 1, 2017, which means that the related services must have been provided to his wife on or after August 1, 2013. The challenged claims, however, pertain to services rendered no later than January 2012, so Emerick's lawsuit missed the filing deadline by over a year and a half. On its face, Emerick's action is untimely and he never challenges that conclusion.

The only question remaining, therefore, is whether something tolled or otherwise excused the three-year limitations period. Responding to Anthem's motion, Emerick characterizes his August 3, 2013, letter to Anthem as a "grievance letter," and argues that, because Anthem never acted on his grievance, he could not have filed suit "until [Anthem's internal] appeal procedure [had] been exhausted." [DE 37-2 at 1; DE 52 at 2-3] But even assuming that Emerick's letter qualified as a grievance under the policy (which Anthem disputes), that does not change the outcome here. The policy contains no language indicating that filing a *grievance* excuses the three-year limitations period; it only states that a pending *appeal* of an adverse grievance decision will toll the legal action deadline. [DE 9-1 at 88-89] It also makes clear that, for ERISA members like Emerick, filing such an appeal is voluntary and need not be exhausted prior to filing suit. *Id.* at 88. But Emerick cannot take advantage of this tolling provision because he never filed an internal appeal; Anthem reviewed its grievance and appeals records but has no history of Emerick filing an appeal related to his complained-of claims [Affidavit of Susan Thuma ¶¶ 4], and Emerick presents nothing to dispute this.

Emerick provides no elaboration in his filings regarding whether the limitations period was tolled here, and the Court will not create arguments for him. But even to the extent his position sounds in equitable tolling or estoppel, Emerick still cannot succeed. The doctrines of equitable tolling and estoppel can be applied to the "rare cases" in which internal review

prevents beneficiaries from bringing ERISA actions within the contractual period. *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 114 (2013). "A litigant seeking equitable tolling bears the burden of establishing two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *Angiulo v. United States*, 867 F. Supp. 2d 990, 1001 (N.D. Ill. 2012) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The extraordinary circumstances causing delay must also present an "external obstacle," i.e., something beyond the plaintiff's control. *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016). Equitable tolling is granted sparingly. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Equitable estoppel on the other hand requires: (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on such misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel. *Merrill Iron & Steel, Inc. v. Bechtold*, No. 06-C-110-S, 2006 WL 1515619, at *6 (W.D. Wis. May 25, 2006) (citing *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992)). Equitable estoppel only applies when a defendant "conceal[s] the existence of plaintiff's claim or … promise[s] not to plead the statute of limitations." *Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 622 (7th Cir. 2002). Granted, the doctrine is "applied more liberally to a contractual limitations period than to a statutory limitations period," but it is the plaintiff's burden to present facts to satisfy these elements. *Bechtold*, 2006 WL 1515619, at *6 (citing *Doe*, 112 F.3d at 877; *Bomba v. W.L Belvidere, Inc.*, 579 F.2d 1067, 1070-71 (7th Cir. 1978)).

Emerick has not carried his burden here. He has presented no evidence of extraordinary external factors that prevented him from filing suit before the limitations deadline so as to invoke equitable tolling. Nor has he pointed to any efforts on the part of Anthem to induce or lull him into refraining from taking legal action by promising not to raise a limitations defense. To the

contrary, he claims that Anthem made no response at all to his August 2013 letter, which undermines any notion that Anthem made a "misrepresentation" upon which Emerick reasonably relied to his detriment. Emerick cannot base an estoppel argument on Anthem's silence in response to his alleged attempts to communicate following that letter; indeed, he could not even have relied on back-and-forth negotiations of his claim (had they occurred) absent a representation from Anthem that it would excuse the contractual limitations period. *See Librizzi v. Children's Mem'l Med. Cent.*, 134 F.3d 1302, 1307 (7th Cir. 1998) (holding ERISA plaintiff could not rely on equitable estoppel to circumvent limitations defense where he engaged in negotiations with defendant to resolve claim yet defendant did not induce him to defer litigation; plaintiff had been "an unsuccessful supplicant throughout, and multiple unrequited demands do not provide additional time to start a suit."); *Bechtold*, 2006 WL 1515619, at *6 ("[I]t is widely held that mere negotiations concerning a disputed claim without more is insufficient to warrant application of equitable estoppel.") (citing *Cange v. Stotler & Co.*, 826 F.2d 581, 587 (7th Cir. 1987)); *cf. Burris v. Aurora Health Care Long Term Disability Plan*, No. 08-CV-322, 2009 WL 675607, at **3-5 (estopping ERISA defendant from relying on beneficiary's failure to timely file suit where defendant informed beneficiary that she would receive a notice of her right to sue, which misled plaintiff into thinking she had to wait for said notice before taking legal action).

While it may be true that the policy required all grievances to be exhausted prior to filing suit, the policy also states that all grievances will be addressed within thirty business days at most. [DE 9-1 at 86-87] Again, Emerick admits that Anthem never responded to his August 2013 letter, and so after thirty business days went by without any word, this should have alerted him to the possibility that either Anthem did not interpret his letter as a grievance or that he did not properly submit one. But instead of seeking to rectify this or take legal action, he sat on his

claims until November 2017. Therefore, putting aside the fact that Anthem undertook no effort to conceal Emerick's claim, his years-long reliance on Anthem's silence in response to his August 2013 grievance letter was not reasonable. *See Bechtold*, 2006 WL 1515619, at *6 (granting summary judgment on plaintiff's untimely suit where defendant originally promised to satisfy plaintiff's claim but then withdrew promise and commenced mediation; plaintiff waited over a year after defendant's representations to file suit and such delay was not reasonable under doctrine of equitable estoppel).

## CONCLUSION

The Court is mindful of Mr. Emerick's difficult situation, but not even the most generous reading of the evidence can defeat the fact that his lawsuit is untimely.[7] Therefore, the Court **GRANTS** Anthem's motion for summary judgment. [DE 24] The Court also **DENIES** both Emerick's and Anthem's respective motions to strike, as well as Anthem's recent motion to dismiss. [DE 53; DE 61; DE 87] The Clerk is hereby **DIRECTED** to enter judgment.

SO ORDERED.

ENTERED: March 27, 2019

                                                  /s/ JON E. DEGUILIO
                                                  Judge
                                                  United States District Court

---

[7] After briefing on Anthem's dispositive motion closed, Emerick made three additional filings relating to summary judgment that the Court struck as untimely. [DE 80] None of these filings, however, would have impacted this Order. For example, Emerick's "Response to Deny Summary Judgment" merely repeats the arguments in his previous filings without addressing his fatal timing issue. [DE 71] And his two motions to strike Michell Kersey's affidavit [DE 76; DE 77] similarly focus on immaterial factual discrepancies that have no bearing on his untimely filing of this lawsuit.